MELTON *et al. v.* DONNELL.*

(*Nashville,* December Term, 1937.)

Opinion filed March 5, 1938.

*See Current v. Stevenson, p. 250, **infra.**

Brown & Bentley, of McMinnville, and S. S. Brown, of Woodbury, for appellant.

Turner & Haston, of McMinnville, for appellee.

Mr. Justice McKinney delivered the opinion of the Court.

By the bill complainants seek to enjoin the defendant from erecting gates across a road in which they have acquired an easement. We quote from the answer as follows: "complainants have an easement over said road and acquired the same by prescription of fifty years or more."

The chancellor held that defendant had a right to place gates across said road, notwithstanding this long adverse user by complainants without gates; and held, further, that this was not a proper cause in which to weigh the relative convenience or inconvenience of the parties, and dismissed the bill.

The Court of Appeals reversed the chancellor upon the ground that since it appears without controversy that complainants have an easement in said road, and that the construction of said gates would interfere with their right of passage, the burden rested on the defendant to show that the gates were reasonably necessary as

a protection to his farm, and that the proof failed to establish that fact.

The Shelbyville and McMinnville Highway extends east and west through defendant's farm, 75 acres of which lies north of said highway. The road in controversy extends north from said highway, about the middle of said 75-acre field, a distance of 400 yards, where it enters complainants' 70-acre farm, and extends on north and west to the George Hall community. This road has been used by complainants, the residents of the George Hall community, and the public in general, without gates, as far back as the memory of any living witness goes. Barren Fork River parallels the Shelbyville and McMinnville Highway a short distance to the south and overflows it at times, so that the public has to detour over the road in controversy. It is at the termini of this 400-yard strip of said road through defendant's 75-acre field that it is proposed to construct gates, one at defendant's north boundary line and the other where said road enters said highway. The object of defendant in erecting said gates is to enable him to pasture said 75-acre field without having to fence the road leading through same.

One of the complainants lives just north of said 75-acre field. He operates a school bus, passes over said road several times each day, and insists that if he has to open and shut said gates, and drive the cattle back, that it would greatly inconvenience and interfere with his right of passage.

The defendant purchased his farm about a year prior to the filing of the bill herein. He was reared in that section of the county and was familiar with the long-

continued use of this road by complainants and other residents of that community.

On the trial of this cause there was a contest as to whether this was a public road, but the chancellor and the Court of Appeals have concurred in finding against this contention. Complainants have filed no petition raising this question; hence it is not before us.

The defendant's petition for writ of *certiorari* has heretofore been granted, and counsel have presented their respective contentions at the bar of this court with ability and zeal.

The chancellor predicated his decree upon the authority of *Luster* v. *Garner*, 128 Tenn., 160, 159 S. W., 604, 48 L. R. A. (N. S.), 87, Ann. Cas., 1914D, 769, from which we quote the following:

"A single question of law is presented for determination in this cause: May the owner of a servient estate, now inclosed as agricultural lands, but formerly open woodland, establish and maintain suitable gates at the termini of an easement of way acquired by an adjoining owner of farming lands by prescription; the prescriptive period maturing while the lands were uninclosed woodland, during which no gates or bars were maintained?

"The authorities are at variance as to the rights of the servient owner to erect gates at the ends of a way acquired by prescription; some of the authorities holding that, where gates had not been maintained during the prescriptive period, they cannot be erected against the wish of the owner of the dominant estate, since the extent of the right is held to be commensurate with and determined by the use. [Citing authorities.]

"Courts of other jurisdictions, however, hold that it

is the nature of the easement acquired that should de-
termine, and that gates may be constructed at the ter-
mini of a prescriptive passway, if they be not an un-
reasonable interference with the use of the way.'' [Cit-
ing authorities.]

The court in the above case adopted the latter rule and
gave as its reasons therefor the following:

''We are persuaded that, not only on precedent and
principle, but also on the ground of sound policy, the
right of the owner of the fee to erect and maintain such
gates should be declared. A very considerable portion
of the lands in this state are in mountains or foothills,
frequently making it convenient, almost to the point of
necessity, for a landowner to have ingress and egress
over the lands of a lower owner through such defiles or
'hollows' as appear in the facts of this case. To hold
against the right to erect gates would have a twofold
effect—of rendering more difficult the acquirement of
such a way by adverse user, and of discouraging the
improvement of land, a change from woodland, that may
be nonproductive of profit, into cultivated fields.''

■ The facts of the case cited above are not stated
in the opinion, but it is inferable from the opinion that
the road in question passed through mountain lands,
and that the prescriptive period matured while the lands
were uninclosed woodland. It is quite likely that the
rule applied met the equities of that particular case.
When, however, the reason for the rule ceases the rule it-
self should cease. Since the decision in *Luster* v. *Garner*,
*supra*, the Legislature, by chapter 75, Pub. Acts 1921,
section 1, Code, section 2746, has provided a very sim-
ple remedy by which one whose lands are cut off from

a public road or highway may acquire a right of way through the intervening lands of another.

In regard to clearing land for agricultural purposes, under present conditions, we are admonished to restrict production; and, under our conservation program, in order to check the erosion of tillable lands and to prevent excessive floods, we are admonished to restore our forests by setting out trees on large portions of our cleared lands. Conditions have changed.

■ In the absence of a grant or deed, an easement in a private road can only be acquired by an uninterrupted user by the acquiescence of the owner for a period of twenty years under an adverse claim of right. *Ferrell* v. *Ferrell,* 60 Tenn. (1 Baxt.), 329; *Long* v. *Mayberry,* 96 Tenn., 378, 36 S. W., 1040.

We are of opinion that under modern conditions the better rule is that which prohibits the servient owner from erecting gates or bars across the road where the owner of the dominant estate has used said road uninterruptedly under an adverse claim of right for twenty years, or more, without gates or bars. The following authorities support this rule: *Fankboner* v. *Corder,* 127 Ind., 164, 26 N. E., 766; *Shivers* v. *Shivers,* 32 N. J. Eq., 578, affirmed in 35 N. J. Eq., 562; *Hill* v. *Miller,* 144 Ga., 404, 87 S. E., 385; *Puryear* v. *Clements,* 53 Ga., 232; *Bolton* v. *Murphy,* 41 Utah, 591, 127 P., 335; *Rogerson* v. *Shepherd,* 33 W. Va., 307, 10 S. E., 632.

■ After such a long lapse of time it would be quite a hardship and burden upon the owners of this easement to have to open and shut two gates every time they travel this 400-yard strip of road in an automobile or omnibus.

As previously stated, defendant purchased his farm

recently with knowledge of the long and uninterrupted user of this road by complainants and other residents in that vicinity. So, we are unable to see that his rights will be prejudiced if the *status quo* remains unchanged.

For the reasons stated, the decree of the Court of Appeals will be affirmed.